Case 1:22-cv-06793-NGG-PK Document 10-1 Filed 01/19/23 Page 1 of 11 PageID #: 64

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------x

JEFFREY LAX, SUSAN ARANOFF, RINA YARMISH,
MICHAEL GOLDSTEIN and MICHELLE DAVIDOWITZ,

          Plaintiffs,      Index: 504682/2021

      -against-

THE CITY UNIVERSITY OF NEW YORK, THE
PROFESSIONAL STAFF CONGRESS, THE NEW
CAUCUS OF THE PROFESSIONAL STAFF CONGRESS,
MICHAEL SPEAR, MARGARET FEELEY, DOMINIC
WETZEL, EMILY SCHNEE, BARBARA BOWEN,
MATTHEW GARTNER, ANTHONY ALESSANDRINI,
ELIZABETH DILL, KATHERINE PEREA, LIBBY
GARLAND, and PATRICK LLOYD,

          Defendants.

-------------------------------------------------------------------------x

**AFFIRMATION IN SUPPORT OF ORDER TO SHOW CAUSE**

    JONATHAN WALLACE, an attorney admitted to practice in the courts of the State of New

York, affirms the following to be true under penalty of perjury:

1.   I am counsel, with Remy Green Esq., for individual defendants Anthony Alessandrini,

   Elizabeth Dill, Libby Garland, Matthew Gartner, Kate Perrea, Emily Schnee, and

   Dominic Wetzel (the "Professor Defendants")[1]. I give this affirmation in support of their

   motion, brought on by order to show cause, for an order pursuant to New York City

   Charter section 50-K and New York Education Law Section 6205, directing respondent

   the New York City Corporation Counsel to pay my legal fees and those of Remy Green,

   counsel of these defendants' choice, in the underlying action. The Defendants assert that

   Corporation Counsel owes them representation in this action, but due to a conflict of

   interest, may not represent them and therefore, as provided in the cited sections, is

---

1   There are other Defendants not represented by us who may also be professors at Kingsborough.

obligated to compensate counsel of their choice.

2. Corporation Counsel's conflict is obvious, significant and undeniable. In 2019, I sent

   Corporation Counsel's client, Kingsborough College (KCC), a letter (attached as

   Exhibit A hereto) asking for a meeting with KCC counsel to discuss a profound First

   Amendment chill and hostile environment created for certain of these Professor

   Defendants as a result of KCC's tolerance of Plaintiff Lax's activities, including his

   incessant filing of administrative and public safety complaints against them. KCC never

   even gave the Professor Defendants and me the courtesy of a reply, and the requested

   meeting never took place. As a result of the underlying and intolerable conditions

   addressed in the 2019 Letter, if this matter is not dismissed and the Professor Defendants

   are required to file an answer, that answer will assuredly be accompanied by a cross-

   claim against KCC. Corporation Counsel is perfectly aware of this, has been provided

   with a copy of the 2019 Letter, and continues to maintain, mysteriously and

   unaccountably, that there is no conflict.

### THIS ACTION

3. This action is a law suit brought by Plaintiff Jeffrey Lax and others against the City

   University, the Professor Defendants and others, alleging various causes of action

   including discrimination. Plaintiffs are faculty and staff at KCC, and the Professor

   Defendants are faculty at KCC. Plaintiffs assert either that the Professor Defendants

   aided and abetted acts of religious discrimination by KCC, or possibly the reverse, that

   KCC's tolerance of actions of the Professor Defendants constituted discrimination (the

   Complaint is indeed vague and the Professor Defendants support the arguments made by

   other moving Defendants that the Complaint fails to state a cause of action). In either

   event, since the Professor Defendants are all faculty junior to Plaintiffs, and none of

Case 1:22-cv-06793-NGG-PK   Document 10-1   Filed 01/19/23   Page 3 of 11 PageID #: 66

them supervise any Plaintiffs, the Plaintiffs' arguments (to the extent they state a cause of action) are exclusively that things the Professor Defendants did or said, within the scope of their duties, constitute acts of discrimination by KCC. For example, Plaintiffs assert in their Complaint that one or more of the College Defendants scheduled an on-campus event on a Friday night (paragraph 101); filed an administrative complaint against one of them (paragraph 107); refused to shake a Plaintiff's hand, and then asked him questions during the public portion of a campus event (paragraph 115); and campaigned against them in union elections (paragraph 116). Corporation Counsel has made no claim, nor do we expect it to, that the Professor Defendants are excluded from coverage under the New York City Charter or Education Law sections, nor that the alleged acts (trivial as they are and apparently quite frivolous in the assertion) are anything but within the scope of their employment.

### AS A MATTER OF UNDISPUTED FACT, CORPORATION COUNSEL OWES REPRESENTATION TO THE PROFESSOR DEFENDANTS

2. There is therefore no possible factual dispute that Corporation Counsel owes the Professor Defendants representation. The acts alleged by the Plaintiffs are all clearly within the scope of Defendants' employment, including the filing of administrative complaints, scheduling of events and meetings, conduct of a union campaign, and statements made on campus and at college events.

3. In email correspondence with co-counsel Mx. Green, on which I was cc'd, Maxwell Leighton of Corporation Counsel has invoked two relevant statutes, New York City Charter section 50-K and New York Education Law Section 6205.

4. City Charter Section 50-k(2) provides that the City will indemnify, and the Corporation Counsel defend, a City employee "acting within the scope of his public employment and in the discharge of his duties and... not in violation of any rule or regulation of his

INDEX NO. 504682/2021
RECEIVED NYSCEF: 02/10/2022

Case 1:22-cv-06793-NGG-PK   Document 10-1   Filed 01/19/23   Page 4 of 11 PageID #: 67

agency at the time the alleged act or omission occurred".

5. The Professor Defendants are, on information and belief, considered for the purposes of Section 50-k to be New York City employees because they work for a junior college, defendant KCC (senior CUNY colleges are conversely considered part of SUNY and they and their staff are thus defended by the Attorney General in litigation).

6. New York State Education Law Section 6205(2)(c) provides that an employee of a junior college "shall be entitled to be represented by the city of New York provided, however, that the employee shall be entitled to representation by private counsel of his choice in any civil judicial proceeding whenever the corporation counsel of the city of New York determines based upon his investigation and review of the facts and circumstances of the case that representation by the corporation counsel would be inappropriate, or whenever a court of competent jurisdiction, upon appropriate motion or by a special proceeding, determines that a conflict of interest exists and that the employee is entitled to be represented by private counsel of his choice". This order to show cause brings on a motion for a finding by this Court that a "conflict of interest exists", as further described below.

**The Proposed Meeting**

7. Respondent corporation counsel has not refused representation but has requested an interview with each Defendant without undersigned counsel present, which would be inappropriate.

8. Counsel claims that having us, counsel retained by the Professor Defendants years ago who have worked with them on a variety of administrative investigations and issues, present at the meeting would break privilege.

9. By making this claim, Corporation Counsel has put itself in a true Catch-22 situation.

10. If no conflict exists, clearly a privilege umbrella covers any conversations between the

Case 1:22-cv-06793-NGG-PK   Document 10-1   Filed 01/19/23   Page 5 of 11 PageID #: 68

Professor Defendants and all attorneys representing them, who form part of the same team.

11. On the other hand, if Corporation Counsel correctly perceives that I and co-counsel Green, are in an adversarial position to their client KCC, then it is absolutely true that the conversation at our meeting would not be privileged.

12. But if we are adversarial, then so are the clients we are assertively representing, the Professor Defendants-- in which case Corporation Counsel meeting with them without us is highly improper, and more in the nature of discovery, or manipulation, than representation, and would in fact breach ethical rules and constitute a gross interference in our professional relationship with these Defendants.

13. Corporation Counsel cannot have it both ways-- that there is no conflict, but we are to be excluded from the meeting.

**Mx. Green's Email Exchange with Corporation Counsel**

14. From December 10, 2021 to January 21, 2022 Maxwell Leighton of Corporation Counsel and my co-counsel Remy Green exchanged a series of emails about the requests for representation received by Corporation Counsel from the Professor Defendants. I was cc'd on all of these in the ordinary course of business. Although these communications would not be privileged either under Corporation Counsel's theory (that Mx. Green and I must be excluded from meetings with the Professor Defendants to protect privilege) or ours (that a conflict of interest exists), from an abundance of caution I am not attaching these as an Exhibit, but offer them to this Court in camera, if it so wishes.

15. In very brief summary, Mr. Leighton took the position that he must meet the Professor Defendants to confirm representation; that Mx. Green and I could not attend these meetings, because our doing so would break privilege; and that no conflict of interest

existed between KCC and the Professor Defendants, so that Corporation Counsel could

represent them all.

## CORPORATION COUNSEL CLEARLY HAS A CONFLICT OF INTEREST REPRESENTING THE PROFESSOR DEFENDANTS

16. Corporation Counsel is actually conflicted out in two separate ways,  by KCC's prior adverse actions to the Professor Defendants, which must have been advised or approved by counsel, and by the Professor Defendant's own intentions and strategy in litigating this matter.

17. Taking the second issue first, as most important, if the Professor Defendants file an answer to the complaint[2], it is their intention, on advice of counsel, to file a cross-claim against defendant KCC containing  a cause of action for First Amendment retaliation.

18. The Professor Defendants have long held that Plaintiffs Lax et al have a long history of frivolously using KCC administrative procedures to make the Professor Defendants' lives a living hell, and to obtain their denial of tenure or termination from the University —all because the Professor Defendants have politically progressive views and beliefs with which the Plaintiffs greatly disagree.

19. By tolerating for years  the Plaintiffs' ongoing obvious misuse of KCC procedures to eliminate professional security and academic freedom for the Professor Defendants, KCC has aided and abetted these Plaintiffs and brought state sanction and power to Plaintiffs' frivolous acts of harassment.

20. As mentioned above, on behalf of the Professor Defendants, I served a demand   letter on KCC in 2019, a copy of which is attached as Exhibit A hereto.

21. Clearly, due to the Professor Defendants' meritorious cross-claims, Corporation Counsel

---

2   Motions to dismiss for failure to state a cause of action, which the Professor Defendants intend to join, are pending.

Case 1:22-cv-06793-NGG-PK   Document 10-1   Filed 01/19/23   Page 7 of 11 PageID #: 70

has a conflict of interest regardless of any prior advice or actions, as it cannot simultaneously represent the Cross-claim plaintiffs and defendants.

22. In addition, over the years KCC, whether represented by Corporation Counsel or other lawyers, has a persistent and ongoing pattern of  pointing fingers at the Professor Defendants to clear itself of responsibility.  This Court need only examine the Memorandum of Law filed by KCC August 16, 2021, ECF #26 in the instant matter: "The bulk of the Complaint takes aim at a faculty group, the Progressive Faculty Caucus..." p. 2 "Lax cites Professor Gartner's proposed measure, which was never enacted". p. 7 "[T]he EEOC also failed to differentiate between CUNY and the PFC— instead lumping these two discrete entities together under the single label 'Respondent'."

23. The Professor Defendants simply do not trust Corporation Counsel assertively to defend their interests. Nowhere in the Memorandum of Law is there any implication, which one would hope to find, for example, that Professor Gartner's "proposed measure" was an appropriate and very mainstream conflict of interest provision for faculty governance, or that the Progressive Faculty Caucus was engaging in First Amendment-protected freedom of association, for example.

24.  I and Mx. Green have represented the Professor Defendants in the past in administrative proceedings brought by KCC at Professor Lax's behest, for example, an investigation by the Jackson Lewis law firm retained by KCC circa 2019 to re-investigate the Sabbath discrimination assertion on which KCC had already once closed the book. Given that the Professor Defendants have repeatedly been under KCC's spotlight and made to feel highly uncomfortable and chilled in their First Amendment-protected expression for years now, there is no reason why they should be compelled to share KCC counsel and strategy in exchange for indemnification under the New York City Charter and the

Case 1:22-cv-06793-NGG-PK   Document 10-1   Filed 01/19/23   Page 8 of 11 PageID #: 71

Education Law.

25. Attached as Exhibit B hereto is a letter from EEOC, in response to yet another administrative complaint filed by Plaintiff Lax, in which the agency's representative essentially parrots a false assertion by Professor Lax, that the PFC engaged in religious discrimination against him by scheduling a number of events on the Jewish Sabbath. Given that the Professor Defendants were never informed by Corporation Counsel or KCC that the EEOC proceeding was pending, nor were they ever interviewed to be given the opportunity to comment on and correct this assertion;  and, given the incorrect assertions stated in the letter,  Corporation Counsel's diligence even  in representing KCC's interests is in question; this Court should direct that the Professor Defendants be allowed,  at the City's expense, to retain counsel they trust.

**DUNTON REQUIRES THAT THIS COURT HOLD A HEARING ON THE CONFLICT**

26. Under the rule in *Dunton v County of Suffolk,* 729 F.2d 903 (2nd Cir. 1983), *petition for writ of prohibition dismissed,*   469 US 1029 (1984), this Court should order a hearing to determine Corporation Counsel's conflict in representing the Professor Defendants, resolving all "doubts in favor of disqualification", *Death v Salem,* 111 AD2d 778, 781 (2d Dept 1985); *England v Town of Clarkstown,* 166 Misc 2d 834, 837-838 (Sup Ct, Rockland County 1995) (Court must examine  "'possibility' of a conflict... which would warrant disqualification of counsel"); *Merrill v County of Broome,* 244 AD2d 590, 593 (3d Dept 1997) (conflict was evident in "defenses" asserted by government employer in its "second amended answer" disclaiming that employees acted in scope of duties), to the extent it does not simply disqualify Corporation Counsel outright.

Case 1:22-cv-06793-NGG-PK    Document 10-1    Filed 01/19/23    Page 9 of 11 PageID #: 72

27. As the Second Circuit explained therein, "[a]fter *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict" inherently. *Dunton*, 729 F.2d at 907.

28. That conflict sits latent in most cases. But it can become more than nascent based on circumstances: "A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." 729 F.2d at 907.

29. It has long ago crossed that threshold here.

30. The Professor Defendants will assert that KCC, at Plaintiffs' behest, conducted repeated investigations into them in a way that was borderline frivolous, and categorically wrong, including the unnecessary and politicized Jackson Lewis investigation into charges that KCC had already determined to have no basis.

31. Of course, KCC will attempt to show the opposite — and the defenses they have filed both here and at the EEOC depend largely on an attempt to show that the investigation by Jackson Lewis was conducted appropriately.

32. Beyond that, the 2019 letter asserting that KCC was tolerating retaliatory action by Plaintiff Lax, and the Professor Defendants' intention as set forth herein to file cross-claims, are more than sufficient to require that this Court set a *Dunton* hearing. *Jones v. City of Albany,* 18-cv-18 (NDNY), ECF No. 33, *citing Dunton*, 729 F2d at 909 (upon information and belief, the Court in *Jones* eventually allowed joint representation, but only after a closed-door conference at which the Court — as I understand it, over Corporation Counsel's objections — assured itself no conflict existed). Part of the basis

for that claim will be the deep flaws in the Jackson Lewis investigation — once again pitting KCC and the Professor Defendants against each other.

33. In fact, the Professor Defendants intend to seek discovery about the communications between Jackson Lewis and KCC. It seems that there was a decision made at some point to, despite the facts, try to throw *some* bone to Plaintiffs in the investigation.

34. Will KCC assert privilege over those communications? If so, there will be a fight. In that fight, will the Corporation Counsel be able to faithfully represent the Professor Defendants if those communications show a flaw in the process that damns KCC and vindicates the Professor Defendants — particularly when KCC's institutional position favors extensive privilege over such communications?

35. And, even if so, would Corporation Counsel even *disclose* the existence of such communications to their nominal clients (that is, the Professor Defendants), to discuss strategy? It seems beyond belief. And it would likely be unethical to do so, given their duty of loyalty to KCC.

36. In short, it is unfair to everyone involved not to sort this conflict out properly, and do so immediately. It is unfair to the Professor Defendants to be forced to sit down with counsel who represents an adverse party ***without unbiased counsel at least present***, seemingly on pain of the City threatening to withhold the indemnification they are entitled to by law — to say nothing of having to assure themselves that the Corporation Counsel is not serving its longer-term client more faithfully. It is unfair to Plaintiffs who, if they prevail, will potentially face reversal because of the tainted proceeding (as in *Dunton*). It is unfair to the Court, who must basically run the conflict check *for* the Corporation Counsel. And it is ultimately unfair to the City itself and its taxpayers for Corporation Counsel seemingly to have no reasonable approach to conflicts in a way

Case 1:22-cv-06793-NGG-PK   Document 10-1   Filed 01/19/23   Page 11 of 11 PageID #: 74

that ultimately multiplies proceedings.

## CONCLUSION

**37.** For the reasons given herein, the Professor Defendants respectfully request this Court to

declare that the Professor Defendants are entitled to representation by Corporation

Counsel; to  disqualify Corporation Counsel from representing them due to its conflict

of interest; to direct Corporation Counsel and New York City to pay reasonable legal

fees of the Professor Defendants' attorney of choice, to the undersigned and  Remy

Green Esq.; and to extend the time of the Professor Defendants to answer the Complaint

or otherwise move herein until thirty days after this motion is decided; or, in the

alternative, if this Court should determine no conflict of interest exists, directing

Corporation Counsel to permit attendance at the meeting(s) with Professor Defendants

by me and Mx. Green; together with such other and further relief as may be just and

proper.

DATED:  Amagansett, New York

 February 6, 2022


                                        /s/ Jonathan Wallace Esq.
                                        PO #728
                                        Amagansett, NY 11930
                                        917-359-6234
                                        jonathan.wallace80@gmail.com
                                        Attorney for Professor Defendants