Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 1 of 33 PageID #: 108

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X

JEFFREY LAX, SUSAN ARANOFF, RINA YARMISH,
MICHAEL GOLDSTEIN and MICHELLE DAVIDOWITZ,

                Plaintiffs,

-against-

THE CITY UNIVERSITY OF NEW YORK, THE
PROFESSIONAL STAFF CONGRESS, THE NEW
CAUCUS OF THE PROFESSIONAL STAFF CONGRESS,
MICHAEL SPEAR, MARGARET FEELEY, DOMINIC
WETZEL, EMILY SCHNEE, BARBARA BOWEN,
MATTHEW GARTNER, ANTHONY ALESSANDRINI,
ELIZABETH DILL, KATHERINE PEREA, LIBBY
GARLAND, and PATRICK LLOYD,

                Defendants.
-------------------------------------------------------------------X

Index No.: _____

Plaintiff designates Kings
County as the place of trial

The bases of the venue are
Defendants' Place of Business and
Situs of Causes of Action

**SUMMONS**

**To the above named Defendants:**

      **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorney within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       February 25, 2021

                Yours, etc.,

                THE ZWEIG LAW FIRM, P.C.

                By: _____
                     Jonah S. Zweig, Esq.
                *Office and P.O. Address:*
                1901 Avenue S
                Brooklyn, New York 11229
                (718) 506-4105
                jzweig@zweigpc.com

*Defendant's Address*:

**THE CITY UNIVERSITY OF NEW YORK**
205 East 42nd Street
New York, New York 10017

c/o *New York City Law Department and Corporation Counsel*
100 Church Street
New York, New York 10007

c/o *Office of the Attorney General*
28 Liberty Street
New York, New York 10005

**THE PROFESSIONAL STAFF CONGRESS**
61 Broadway, 15th Floor
New York, New York 10006

**THE NEW CAUCUS OF THE PROFESSIONAL STAFF CONGRESS**
c/o *The Professional Staff Congress*

**BARBARA BOWEN**
c/o *The Professional Staff Congress*

**MICHAEL SPEAR**
c/o *Kingsborough Community College*
(2001 Oriental Boulevard
Brooklyn, New York 11235-2398)

**MARGARET FEELEY**
c/o *Kingsborough Community College*

**DOMINIC WETZEL**
c/o *Kingsborough Community College*

**EMILY SCHNEE**
c/o *Kingsborough Community College*

**MATTHEW GARTNER**
c/o *Kingsborough Community College*

**ANTHONY ALESSANDRINI**
c/o *Kingsborough Community College*

**ELIZABETH DILL**
c/o *Kingsborough Community College*

**KATHERINE PEREA**
c/o *Kingsborough Community College*

**LIBBY GARLAND**
c/o *Kingsborough Community College*

**PATRICK LLOYD**
c/o *Kingsborough Community College*

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 3 of 33 PageID #: 110

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X

JEFFREY LAX, SUSAN ARANOFF, RINA YARMISH,
MICHAEL GOLDSTEIN and MICHELLE DAVIDOWITZ,

                                 Plaintiffs,

                          -against-

THE CITY UNIVERSITY OF NEW YORK, THE
PROFESSIONAL STAFF CONGRESS, THE NEW
CAUCUS OF THE PROFESSIONAL STAFF CONGRESS,
MICHAEL SPEAR, MARGARET FEELEY, DOMINIC
WETZEL, EMILY SCHNEE, BARBARA BOWEN,
MATTHEW GARTNER, ANTHONY ALESSANDRINI,
ELIZABETH DILL, KATHERINE PEREA, LIBBY
GARLAND, and PATRICK LLOYD,

                                Defendants.

-------------------------------------------------------------------------X

Index No.: _____

**COMPLAINT**

        Plaintiff JEFFREY LAX ("Plaintiff Lax"), Plaintiff SUSAN ARANOFF ("Plaintiff

Aranoff"), Plaintiff RINA YARMISH ("Plaintiff Yarmish"), Plaintiff MICHAEL

GOLDSTEIN ("Plaintiff Goldstein"), and Plaintiff MICHELLE DAVIDOWITZ ("Plaintiff

Davidowitz"), by and through their counsel, The ZWEIG LAW FIRM, P.C. as and for their

Complaint against THE CITY UNIVERSITY OF NEW YORK ("CUNY"), THE

PROFESSIONAL STAFF CONGRESS (the "Union"), THE NEW CAUCUS OF THE

PROFESSIONAL STAFF CONGRESS ("New Caucus"), MICHAEL SPEAR ("Spear"),

MARGARET FEELEY ("Feeley"), DOMINIC WETZEL  ("Wetzel"), EMILY SCHNEE

("Schnee"), BARBARA BOWEN ("Bowen"), MATTHEW GARTNER ("Gartner"),

ANTHONY ALESSANDRINI ("Alessandrini"), ELIZABETH DILL ("Dill"), KATHERINE

PEREA ("Perea"), LIBBY GARLAND ("Garland"), and PATRICK LLOYD ("Lloyd") allege

Case 1:24-cv-06793-NGG-PK    Document 10-3    Filed 01/19/23    Page 4 of 33 PageID #: 111

upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

1.      This is a civil action for monetary damages and equitable relief for Defendant's violations of: (i) religious discrimination in violation of the New York State Human Rights Law, Executive Law Section 290 et seq. ("NYSHRL"); (ii) retaliation in violation of the NYSHRL; (iii) the anti-discrimination provisions of Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); (iv) the anti-retaliation provisions of the NYCHRL; (v) assault and false imprisonment; and (vi) each and every other cause(s) of action that can be inferred from the facts set forth herein.

## PARTIES

2.      At all relevant times, Plaintiff Lax was and still is a resident of the State of New York.

3.      At all relevant times, Plaintiff Aranoff was and still is a resident of the State of New York.

4.      At all relevant times, Plaintiff Yarmish was and still is a resident of the State of New York.

5.      At all relevant times, Plaintiff Goldstein was and still is a resident of the State of New Jersey.

6.      At all relevant times, Plaintiff Davidowitz was and still is a resident of the State of New Jersey.

7.      Plaintiffs are each Observant Jewish.

8.      At all times material herein, Plaintiffs were each an "employee" of CUNY

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 02/26/2021

entitled to protection within the meaning of the NYSHRL and the NYCHRL.

9.      Defendant "CUNY" is the public university system of the City of New York, which is organized and existing under and by virtue of the laws of the State of New York and New York City to administer and maintain twenty-three (23) educational institutions including, but not limited to, Kingsborough Community College ("Kingsborough").

10.     At all relevant times, CUNY has employed four or more employees and is an "employer" within the meanings of the NYSHRL and the NYCHRL.

11.     Defendant, PROFESSIONAL STAFF CONGRESS (the "Union") is a "labor organization" as defined in the NYSHRL and the NYCHRL.

12.     Defendant THE NEW CAUCUS OF THE PROFESSIONAL STAFF CONGRESS ("New Caucus") is a political party of the Union.

13.     The New Caucus actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

14.     At all relevant times, Defendant, MICHAEL SPEAR ("Spear"), was a Kingsborough professor, an officer of the Union and upon information and belief was an officer of the New Caucus.

15.     Spear actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

16.     Upon information and belief, Spear is a resident of the City and State of New York.

17.     At all relevant times, Defendant MARGARET FEELEY ("Feeley"), was a Kingsborough professor, an officer of the Union, a high-ranking member of the CUNY-wide PSC Executive Council and a member of the New Caucus.

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 6 of 33 PageID #: 113

18.     Feeley actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

19.     Upon information and belief, Feeley is a resident of the City and State of New York.

20.     At all relevant times, Defendant DOMINIC WETZEL ("Wetzel"), was a Kingsborough professor, a delegate of the Union and upon information and belief was an officer of the New Caucus.

21.     Wetzel actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

22.     Upon information and belief, Wetzel is a resident of the City and State of New York.

23.     At all relevant times, Defendant EMILY SCHNEE ("Schnee"), was a Kingsborough professor, a delegate of the Union and a member of the New Caucus.

24.     Schnee actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

25.     Upon information and belief, Schnee is a resident of the City and State of New York.

26.     At all relevant times, Defendant BARBARA BOWEN ("Bowen"), was the president of the Union and upon information and belief was a member of the Governing Board of the New Caucus.

27.     Bowen actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

28.     Upon information and belief, Bowen is a resident of the City and State of New

Case 1:22-cv-06793-NGG-PK    Document 10-3    Filed 01/19/23    Page 7 of 33 PageID #: 114

York.

29.     At all relevant times, Defendant MATTHEW GARTNER ("Gartner"), was a Kingsborough professor and a member of the New Caucus.

30.     Gartner actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

31.     Upon information and belief, Gartner is a resident of the City and State of New York.

32.     At all relevant times, Defendant ANTHONY ALESSANDRINI ("Alessandrini"), was a Kingsborough professor.

33.     Alessandrini actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

34.     Upon information and belief, Alessandrini is a resident of the City and State of New York.

35.     At all relevant times, Defendant ELIZABETH DILL ("Dill"), was a Kingsborough professor and a member of the New Caucus.

36.     Dill actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

37.     Upon information and belief, Dill is a resident of the City and State of New York.

38.     At all relevant times, Defendant KATHERINE PEREA ("Perea"), was a Kingsborough professor and a member of the New Caucus.

39.     Perea actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 8 of 33 PageID #: 115

40. Upon information and belief, Perea is a resident of the City and State of New York.

41. At all relevant times, Defendant LIBBY GARLAND ("Garland"), was a Kingsborough professor and a member of the New Caucus.

42. Garland actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

43. Upon information and belief, Garland is a resident of the City and State of New York.

44. At all relevant times, Defendant PATRICK LLOYD ("Lloyd"), was a Kingsborough professor and a member of the New Caucus.

45. Lloyd actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

46. Upon information and belief, Lloyd is a resident of the City and State of New York.

47. This action arises out of Defendants' wrongful, illegal, and tortious conduct within the State of New York and the City of New York.

## BACKGROUND OF PLAINTIFFS' EMPLOYMENT

48. Plaintiff Lax earned a Bachelor of Science degree in Business, Management, and Finance in 1995 from Brooklyn College.

49. Plaintiff Lax earned a Juris Doctor in 1998 from Benjamin N. Cardozo School of Law, Yeshiva University.

50. Plaintiff Lax earned a Masters of Business Administration degree in 2000 from City University of New York - Baruch College - Zicklin School of Business.

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 9 of 33 PageID #: 116

51.      Before commencing his employment by Kingsborough, Plaintiff Lax practiced law and worked at various colleges as an adjunct professor.

52.      Plaintiff Lax commenced his employment by CUNY in 2000.

53.      Plaintiff Lax commenced his employment by Kingsborough in 2004 with the title or position of Assistant Professor.

54.      Kingsborough assigned Plaintiff Lax to its Business Department.

55.      Plaintiff Lax earned tenure approximately five (5) years after commencing his employment by Kingsborough.

56.      In approximately 2010, Kingsborough promoted Plaintiff Lax to the title or position of Associate Professor.

57.      In 2011, Plaintiff Lax became the Chairperson of the Business Department, which includes the responsibility to supervise over 50 faculty and office staff members.

58.      In approximately October 2013, Kingsborough promoted Plaintiff Lax to the title or position of Professor.

59.      Plaintiff Lax has consistently received excellent peer evaluations and student evaluations and has published scholarly articles.

60.      At all times during the course of his employment by Kingsborough, Plaintiff Lax performed his services competently, faithfully, diligently, and in an outstanding manner.

61.      Plaintiff Aranoff earned a Bachelor of Arts degree from Barnard College in 1969.

62.      Plaintiff Aranoff earned a Master of Philosophy degree from Columbia University in 1972 and a Doctor of Philosophy degree from Columbia University in 1986.

63.      Professor Aranoff taught as an adjunct instructor at Hofstra University in 1974.

INDEX NO. 504682/2021
Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 10 of 33 PageID #: 117
RECEIVED NYSCEF: 02/26/2021

64.     Professor Aranoff was the Instructor and Chair of Economics Department of the College of Mount St. Vincent from 1978 to 1982.

65.     Professor Aranoff began teaching at Kingsborough in 1983 through the present. During this time, she has held the positions of Instructor, Assistant Professor, Associate Professor, and Professor.

66.     Plaintiff Aranoff has consistently received excellent peer evaluations and student evaluations and has published scholarly articles.

67.     At all times during the course of her employment by Kingsborough, Plaintiff Aranoff performed her services competently, faithfully, diligently, and in an outstanding manner.

68.     Plaintiff Yarmish earned Master of Science and PhD degrees from New York University's Graduate School of Engineering.

69.     Prior to her employment at Kingsborough, Plaintiff Yarmish worked as an experienced programmer and analyst. Her project work included programming modifications to the diagnostic system for the Poseidon Navigation Complex, real-time systems development for the Perkin Elmer Corporation, and such business-related projects as payroll and inventory systems for both private and public concerns.

70.     Plaintiff Yarmish has served as the Chairperson of the Department of Mathematics and Computer Science at Kingsborough since 1997. At the time of her election as department chair, Plaintiff Yarmish was the first woman to be chosen as chair of a Science, Technology, Engineering, and Mathematics ("STEM") department at Kingsborough.

71.     During Plaintiff Yarmish's tenure as Chairperson, the Mathematics and Computer Science department and its faculty have increased in four-fold in size.

72. Plaintiff Yarmish has consistently received excellent peer evaluations and student evaluations and has published scholarly articles in the areas of mathematics, mathematics education and computer languages. Plaintiff Yarmish has also authored three well-received books on computer languages for large publishing houses, including Addison-Wesley, Science Research Associates and Prentice-Hall. Her seminal text, "Assembly Language Fundamentals," was translated by Mir Publishers (Moscow) into Russian and by Dewan Bahasa dan Pustaka into Bahasa-Malaysian.

73. At all times during the course of her employment by Kingsborough, Plaintiff Yarmish performed her services competently, faithfully, diligently, and in an outstanding manner.

74. Plaintiff Goldstein earned a Bachelor of Arts degree from Bennington College in 1985.

75. Plaintiff Goldstein earned a Juris Doctor degree from the City University School of Law in 1989.

76. From September 1989 to September 1992, Plaintiff Goldstein worked as the Assistant Director of Executive Education Programs at Baruch College, a CUNY college.

77. From September 1992 to June 1996, Plaintiff Goldstein worked as the Assistant Director Law and Justice Institute Teacher at the New York City Board of Education.

78. From September 1996 to August 1999, Plaintiff Goldstein worked as the Director of Graduate Admissions at Hunter College, a CUNY college.

79. Plaintiff Goldstein has worked at Kingsborough since September 1999 in various positions, including: Associate Administrator Continuing Education; Assistant to Vice President of College; Advancement Director of Alumni Relations; Director of Public

Relations; and his current position of Director of Kingsborough Experience.

80. Plaintiff Goldstein's father, Leon M. Goldstein, was President of Kingsborough for 29 years, as well as the Acting Chancellor of CUNY for two years and worked at CUNY in various positions for more than 45 years.

81. Plaintiff Goldstein's mother, Mary Goldstein, was the former Dean of Academic Affairs at CUNY Central, as well as Vice President of the John Jay College of Criminal Justice, and worked at CUNY for more than 40 years.

82. At all times during the course of his employment by Kingsborough, Plaintiff Goldstein performed his services competently, faithfully, diligently, and in an outstanding manner.

83. Plaintiff Davidowitz earned a Bachelor of Science degree in Accounting from Queens College.

84. Plaintiff Davidowitz earned a Masters in Business Administration in Finance from Baruch College in 1999.

85. Prior to working at Kingsborough, Plaintiff Davidowitz practiced accounting for various companies and firms and received a Certified Public Accountant ("CPA") license.

86. Plaintiff Davidowitz began working for Kingsborough in January 2012 as a substitute assistant professor. In or around the fall of 2012, Plaintiff Davidowitz became a full-time assistant professor.

87. Plaintiff Davidowitz received tenure in 2019.

88. At all times during the course of her employment by Kingsborough, Plaintiff Goldstein performed her services competently, faithfully, diligently, and in an outstanding manner.

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 13 of 33 PageID #: 120

## HOSTILE WORK ENVIRONMENT & DISPARATE TREATMENT

89.     The Plaintiffs are religiously Observant Jews. Such an identity typically entails engaging in various Jewish religious practices and beliefs such as: the observance of kosher-dietary laws; the observance of the Jewish Sabbath from Friday evening to Saturday evening; and the wearing of clothing or accessories that outwardly identify a person as being Jewish. This is by no means an exhaustive list.

90.     During Plaintiffs' employment by Kingsborough, Defendants created, promoted, and maintained a pervasively hostile work environment and atmosphere and subjected the Plaintiffs to disparate treatment.

91.     Defendants engaged in a systematic policy or practice of discrimination that commenced in approximately 2011 and continues today.

92.     Plaintiffs are faced with harassment of such quality that a reasonable person, in the same circumstances, would find that the conditions of his or her employment had altered.

93.     Despite their outstanding work performance, Plaintiffs were treated less favorably and with hostility by Defendants as compared with similarly situated non-Observant Jewish employees.

94.     Plaintiffs and other Observant Jewish faculty and staff members at Kingsborough have faced pervasive, anti-religious discrimination from a particular segment of fellow faculty members who are the leaders of a faculty group called the Progressive Faculty Caucus of Kingsborough Community College (the "PFC") and are also members of the New Caucus. The current hostile environment for Observant Jews at Kingsborough is, in part, an outgrowth of the anti-Semitic and anti-Judaic hiring practices of long-time former provost and interim-president, Stuart Suss ("Suss"), who repeatedly stated that there were "too many Jews"

at Kingsborough and undertook a campaign to "remedy" what he perceived to be a significant problem by limiting and preventing the hiring of Jews, by limiting and preventing promotion opportunities for Jews, and by implementing various other repugnant discriminatory practices.

95.     In 2016, Plaintiff Lax brought an action against CUNY and Suss, individually, in a still-ongoing federal lawsuit alleging that Kingsborough had created, promoted and maintained a pervasively hostile work environment for Observant Jewish faculty due to Suss's hiring practices.

96.     The present action is relative to discriminatory practices and disparate treatment occurring from 2018 through the present at the hands of the PFC, the Union, the New Caucus, and CUNY.

97.     Upon information and belief, the PFC was formed in or about late 2016 or early 2017 in response to the election of Donald Trump as president with the purported purpose of advancing various "progressive" initiatives on the Kingsborough campus.

98.     In or about September 2017, Plaintiffs contacted PFC leaders Wetzel and Spear requesting entry into the PFC. Plaintiff Lax has a long and considerable history promoting various progressive causes including women's workplace rights and LGBTQ rights. As such, Plaintiff Lax was interested in gaining admission to the PFC. The other Plaintiffs were also interested in joining the PFC.

99.     In a clear and recognizable pattern of discrimination, the Plaintiffs and every other Observant Jewish applicant to the PFC were denied entry. Upon information and belief, at least six Observant Jews were denied acceptance into the PFC; there are no Observant Jewish members of the PFC, and *no other* applicants were denied acceptance to the PFC.

100.    With the exception of Observant Jews, PFC application requests are routinely

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 15 of 33 PageID #: 122

and immediately honored without scrutiny. At one point, the PFC boasted of the power the group had gained at Kingsborough, dubbing itself "The Hundred," an indication of both their membership figure and the corresponding increase in PFC influence at the college. Simply stated, with those membership totals, the PFC and the New Caucus could (and did) typically dominate campus elections at the will of its leadership and routinely lobbied against Observant Jewish candidates running for election.

101.    In another demonstration of prejudice, a PFC organized anti-discrimination event was scheduled on a Friday night, admittedly with the purpose of excluding Sabbath-observant Jewish faculty members.

102.    On February 26, 2018, PFC leader, Professor Elizabeth Dill distributed an email to all faculty on the Kingsborough email system on behalf of the PFC, soliciting discrimination complaints from faculty members to be strategized and discussed at a PFC discrimination event (the "Friday Night Event"). In the email, Dill stated that "[t]he Progressive Faculty Caucus is trying to gather information about discrimination against faculty at Kingsborough. We would like to come together so that we can share our stories and discuss what steps we want to take. If you have experienced discrimination on the basis of race, sexual orientation, gender identity, ability, or ethnicity, please RSVP, using a non-Kingsborough email account, to elizabethadill@gmail.com."

103.    In addition to the discriminatory timing issue, the organizers of the Friday Night Event, by their own admission, excluded anti-religious discrimination from the list of issues to be addressed.

104.    After several college-wide complaints, by both Jewish and non-Jewish faculty members regarding both the scheduling of the Friday Night Event and its disquieting exclusion

of religion as a discrimination category, various PFC leaders responded by obstinately and repeatedly refusing to change either aspect of the event. Instead, they suggested that excluded individuals should schedule their own, separate, event to address discrimination issues that were important to them. For example, in an email dated March 8, 2018, PFC leader Anthony Alessandrini responded to this concern in an e-mail to the entire campus saying that those concerned about the exclusion of Observant Jews and Religious Discrimination Complaints not being permitted at the event should "go ahead and organize some other, different things, things that better fit their vision of how things should be organized."

105.    At times, with the financial and advisory support of Union and New Caucus leaders, PFC members have also called for the removal of Observant Jewish faculty members, administrators, department chairs, and others at Kingsborough, including Plaintiff Lax, Plaintiff Aranoff and Plaintiff Yarmish, and others, based on various pretexts that are in reality due to the religious ideology and/or practice of those individuals. Internally, including on the PFC's e-mail listserv, the observance levels and Zionistic religious beliefs of those Jewish union members were actively discussed as reasons they were targeted for removal. A former member of the PFC informed Plaintiff Lax that there were discussions between Wetzel and others that Observant Jews were undesirable for PFC membership because of a blanket belief that they "tend" to be homophobic and Zionist. PFC and New Caucus members also wrote in the Progressive Labor Party Challenge ("PLP Challenge"), a communist newspaper that circulates on the Kingsborough campus, complaining of their "struggle" against a "network of Zionists" among the faculty at Kingsborough. The PFC distributes this paper throughout the Kingsborough campus and even removes the College Student paper from their receptacles throughout campus, replacing them with the PLP Challenge paper. PFC and New Caucus

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 17 of 33 PageID #: 124

members also complained in a publicly distributed campus survey that "zionist [sic] faculty" engender "oppression" and control the campus. Also, in a February 13, 2018 email to the entire campus, Alessandrini attacked Jews who brought claims of anti-Semitism at Kingsborough, saying that they "reduce the charge of anti-Semitism to a weapon that can be brandished against one's political opponents…through the use of spurious lawsuits."

106.     Around the same time, the Kingsborough campus was suffering numerous other anti-Judaic and anti-Semitic incidents. On February 22, 2018, a photograph of Plaintiff Goldstein's late father, former Kingsborough President Leon Goldstein, was found defaced with anti-Semitic graffiti that read, "Fuck Trump. Kill the Zionist Entity."

107.     The day before the aforementioned vandalized picture was found, PFC member Katherine Perea ("Perea") had complained to an administrator about private Facebook posts by Plaintiff Goldstein that offended her and demanded that he be fired. When she was told that Plaintiff Goldstein would not be fired, she stated, "Then, I guess I will have to handle this myself." Perea, baselessly and without merit, described Plaintiff Goldstein's views as "anti-Muslim," "pro-slavery," "anti-trans," and "anti-gay" and urged that his classes be taken away. Perea undertook this campaign despite her admission that she had never met, spoken with, nor had any direct contact with Plaintiff Goldstein whatsoever. CUNY took no actions against Perea, who continued to engage in a malicious and relentless campaign to get Plaintiff Goldstein fired, making this demand to various administrators, including the then-college-interim-President.

108.     The harassment of Plaintiff Goldstein escalated on May 30 and May 31, 2018 when hundreds of flyers calling for the firing of Plaintiff Goldstein were distributed to students by at least one PFC and New Caucus member and placed in offices and nearly every classroom

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 18 of 33 PageID #: 125

around the Kingsborough campus. The flyers attributed false allegations of racism to Plaintiff Goldstein and included a forged image that was attributed to his private Facebook page despite having not been posted there. The flyers also called on students to demand the termination of Plaintiff Goldstein and to fight his purported racism and sexism.

109.     Around the same time, articles authored by PFC members appeared in the PLP Challenge, on the Kingsborough campus, describing the PFC's struggle against a "network of Zionists among the faculty." An internal PFC email wrote of the necessity to "bring violence to the Zionists on campus."

110.     On October 4, 2018, attorneys representing Plaintiff Goldstein sent a litigation hold letter to various PFC and New Caucus members. Within hours, two nails were found in a tire of Plaintiff Goldstein's car and two nails were found in two different tires of Plaintiff Lax's car. It was the third or fourth time that Plaintiff Lax had found nails in his tires over the previous few months. The uncanny timing, obvious coordination, and sheer frequency of these attacks against Plaintiff Goldstein's and Plaintiff Lax's property are chilling when it is observed that they began occurring after PFC and New Caucus member threats to "bring violence to the Zionists" on Kingsborough's campus and in close proximity to other attacks against Plaintiff Goldstein.

111.     Despite this wide-spread display of anti-Semitic discrimination on the Kingsborough campus, neither CUNY nor the Union have taken any steps to curtail such prejudice and have unfortunately, actively attempted to suppress the investigatory process.

112.     Wide-ranging complaints of religious discrimination against Observant Jews were filed against the PFC Leadership with Kingsborough Chief Diversity Officer Victoria Ajibade ("Ajibade") in or around March 2018.

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 19 of 33 PageID #: 126

113    On March 12, 2018, Ajibade distributed an email to all faculty stating that complaints of religious discrimination against Jews had been filed against the PFC. Ajibade stated that it was her "fervent hope that members of the PFC would give additional, meaningfully [sic] consideration to the possibility of rescheduling [the Friday Night Event] to a date and time that would allow for more inclusive faculty participation."

114    Union leaders, including Barbara Bowen ("Bowen"), the president of the Union, applied pressure to Ajibade to suppress the investigation of the Friday Night Event matter, including Bowen demanding and threatening Ajibade to decline to investigate. Most stunningly, the Union filed a Professional Misconduct complaint *against* Ajibade in order to prevent her from fulfilling her duty to investigate the complaints of anti-Semitism on campus. During a witness interview that Ajibade conducted with Plaintiff Lax on July 12, 2018, Ajibade revealed that the PFC, through the Union, had "registered a complaint of misconduct against me [that is, Ajibade] anonymously," and were intimidating her to end the investigation. Within weeks of receiving these threats, Ajibade left Kingsborough under suspicious circumstances and Kingsborough neglected to hire a new Chief Diversity Officer for approximately a year. Immediately after Ajibade revealed that the Union had targeted her for investigation because she was investigating the PFC and upon leaving CUNY, Spear, a Union officer, went around campus boasting that "there is no [anti-Semitism-related] investigation against the PFC." Spear bragged that the investigation had been "taken care of" and that the PFC had "nothing to worry about."

115.    On April 4, 2019, Plaintiff Lax attended an open-invitation, public informational event held by the New Caucus during the Union election campaign. Plaintiff Lax sat quietly in attendance, trying to simply listen to the speakers, play the "Bingo" game that

was distributed and decorate the postcards that were handed out with colored markers. Not allowed to simply sit peacefully in attendance, Plaintiff Lax was simultaneously accosted at the event by five PFC members, including two Union officials. The two Union officials involved in the attack were running for the top levels of the New Caucus slate: Emily Schnee ("Schnee") for chapter chair; and Wetzel for chapter vice chair. At the start of the event, when Plaintiff Lax first walked in, Wetzel refused to shake the politely extended hand of Plaintiff Lax, whipping his hand backwards to avoid the professional gesture. Though hurt, Plaintiff Lax did not confront Wetzel about the insult, and instead proceeded to move on to a table and sit down quietly. Oddly, Wetzel followed Plaintiff Lax to the table and sat down at the end, near Plaintiff Lax, and confining Plaintiff Lax physically in between himself (Wetzel) and PFC member, Matthew Gartner ("Gartner"), who was on Plaintiff Lax's right side. Immediately upon seeing Plaintiff Lax, Gartner began harassing Plaintiff Lax and pelting him with vitriol and probing and attacking questions. After the event speakers concluded, Plaintiff Lax attempted to get up to leave in order to avoid further badgering and attack, but was not allowed to do so, as he was immediately surrounded and cornered, first simultaneously by Wetzel and Gartner from either side (both simultaneously bullying and bombarding Plaintiff Lax with verbal attacks and cruel comments) and quickly thereafter by three additional PFC members: Alessandrini, Union Official Schnee, and Libby Garland, in a coordinated fashion. Surrounded by all five in close proximity, Plaintiff Lax was physically restrained from leaving and was simultaneously badgered mercilessly and cruelly by as many as four of the five individuals. At one point when Plaintiff Lax attempted to leave, Gartner held his hand above Plaintiff Lax to stop him and said, "we're just getting started."

116. Additionally, PFC and New Caucus members regularly, and sometimes cruelly,

lobbied in a multitude of college elections against any candidates that were Observant Jews. Plaintiff Lax was a victim of this discriminatory and illegal practice when PFC members lobbied against him due to his religious beliefs when he ran for an elected position in or around September 2017. Three years prior to that, before the PFC came into power, Plaintiff Lax, well respected at the college, ran in election for the same position and at that time accumulated more votes than any candidate at the college. It is worth noting that when the PFC and New Caucus members successfully lobbied against Plaintiff Lax during the September 2017 election, they made various disparaging allegations against the Plaintiff Lax despite the fact that almost none of the PFC lobbyists had ever met Plaintiff Lax, nor ever had a personal conversation with him. Plaintiff Lax was not the only Observant Jew against whom PFC and New Caucus members viciously lobbied. Professor Eric Rothenburg, an Observant Jew, was mercilessly mocked and berated on the campus e-mail system by PFC members during a Faculty Senate election and Plaintiff Aranoff was also lobbied against by PFC members. The vicious and cruel approach that PFC Respondents have taken during these elections is part of a repugnant strategy that has nevertheless been extremely effective. It has intimidated and discouraged Observant Jews from choosing to run for elected positions at Kingsborough.

117. In or around November 2018, Plaintiff Lax collegially inquired of PFC and New Caucus members and Union officials, Spear and Wetzel regarding running with their New Caucus slate in the Union election. Wetzel was extremely rude about Plaintiff Lax's request, challenging Plaintiff Lax with several bizarre queries, including, "are you pro union?" and oddly accusing Plaintiff Lax of being a "prankster" despite identifying no pranks that Plaintiff Lax was ever purported to have committed. Wetzel even suggested that Plaintiff Lax run with the other slate, offensively tying Plaintiff Lax to Plaintiff Yarmish's slate, presumably because

Case 1:22-cv-06753-NGG-PK Document 10-3 Filed 01/19/23 Page 22 of 33 PageID #: 129

both were Observant Jews. Plaintiff Lax's request was ignored by Spear, and was ultimately directed to Gartner, who provided the demonstrably false pretext to Plaintif Lax that he could not run with the New Caucus slate because it was full. In truth, the slate was far from finalized during the period that Plaintiff requested consideration.

118    Plaintiff Lax was also discriminated against in being denied participation in Kingsborough Community College Annual Women's Month in March 2018. Plaintiff Lax made multiple requests to Perea to participate and present at this event, all of which were denied. This is despite the fact that Plaintiff Lax has written extensively on women's rights in the workplace, is a staunch advocate for those rights and is regarded as a scholar in that area. Upon information and belief, this denial was due to Plaintiff Lax's religious beliefs. At one point, Perea informed Plaintiff Lax that the decision on denial was that of her colleague, Red Washburn. According to Perea, Washburn did not want men to present on the panel. This was an obvious pretextual excuse, as another man, PFC-leader Dominic Wetzel, was in fact invited to present on that year's panel. Unlike Plaintiff Lax's extensive resume and expertise on the topic, Wetzel had no scholarship related to women's rights whatsoever, and was stunningly unqualified to present on the issue. Worse yet, Wetzel's invitation to present instead of Plaintiff Lax was extended after Wetzel had sent an extremely offensive, sexist e-mail to the entire campus in which he complained about "barefoot and pregnant women" teaching on Kingsborough's campus. So offensive was the email that multiple women came forward to complain and Wetzel was reprimanded by the college. Yet, because of Plaintiff Lax's religion and due to Wetzel's PFC affiliation, Wetzel was invited and Plaintiff Lax was rejected.

119    The Kingsborough campus was also beset by many incidents of anti-Semitism against Observant Jewish students.

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 23 of 33 PageID #: 130

120. In an October 2015 post on ratemyprofessor.com, one student wrote regarding Professor Gartner:

> "Here's the deal, I'm Jewish and needed to take off 2 days in order to observe the holidays, all other professors said no problem and he told me it's my fault and if I didn't like it I should have gone to a Jewish School (something he is not allowed to say). I felt so disgusted by him I was forced to drop his class and file a report and now 3 crds [sic] short."

121. In another unfortunate incident of anti-religious bias against Jewish students, a PFC professor prevented a student from the Jewish student group, Yavneh, from placing her promotional table at a student function despite her having reserved the space beforehand. Kingsborough's Director of Public Safety, James Capozzi, refused to take action against the PFC professor despite being aware that the PFC professor had targeted the group and stolen their table in violation of college policy. Shockingly, he declined to take action, saying, "I do not want to start with those people [the PFC]."

122. In another incident, Perea and another PFC faculty member encouraged an Observant Jewish student to participate in a special public forum, but every time the Jewish student spoke, Perea and the other professor repeatedly and rudely interrupted him. They repeatedly told the student that he is "white" and that he has "white privilege" and that if he only took off his religious headwear he would be like "all the other white men.".

123. Additionally, on December 2, 2019, vilely anti-Semitic flyers were distributed on campus accusing religious Jews of bathing in urine and feces and being purposeful vectors of disease, among other obscenities.

124. CUNY has completely failed to address, remedy or even acknowledge the severe and pervasive anti-religious discrimination and hostile work environment on campus. A U.S. Equal Employment Opportunity Commission ("EEOC") investigation of the incidents

alleged in this complaint found that the Defendants "failed to take corrective action despite the numerous complaints it received in connection with religious discrimination." Moreover, an investigation conducted by CUNY's outside counsel, Jackson Lewis P.C. (the "Jackson Lewis Investigation") regarding the scheduling of the Friday Night Event, found that the Plaintiffs and other Observant Jews were discriminated against in violation of CUNY Policy and State and Federal Law, in that Plaintiff Lax's "observance of the Jewish sabbath was used to prevent him from attending a PFC meeting" and that "in using his religious observance to exclude him, the PFC treated Lax less favorably based on his religion." Despite this damning finding, CUNY still refused to take any remedial action to cure these discriminatory practices. Appeals directly to Kingsborough President Claudia Schrader ("Schrader") to address the discriminatory practices on campus were ignored.

125. Additionally, the Plaintiffs have faced retaliatory action for bringing light to the anti-religious discrimination on campus. In November 2020, Gartner proposed a measure to be added to the College Governance which provided that "Members of faculty review committees will not vote on candidates under consideration by their committee if the review committee member has brought legal action or other formal complaints or adjudicatory procedures (excluding mandatory complaint referrals) against said candidate."

126. It is important to note that the proposed amendment is not concerned with recusing the alleged perpetrator from voting but rather only removing, disqualifying, and penalizing the victim. While this proposal was ultimately denied, it has a chilling and suppressive effect on faculty members who wish to complain of discrimination on the Kingsborough campus, and the fact that it was even submitted for a formal vote by President Schrader, who rejected complaints about its legality by multiple individuals, is striking.

127.    In another particularly egregious example of retaliation, in or around May 2018, Meg Feeley, a Union officer, outrageously filed with Ajibade a complaint of "harassment" against Plaintiff Lax, whom she had never spoken to nor met because, she admitted, she was bothered that he was documenting claims based on religious discrimination. This retaliatory, and itself harassing, "harassment" allegation revolved around one short, professional, and courteous work-related email sent by Lax which Feeley herself admitted was "cordial" in her harassment complaint.

128.    Additionally, on March 13, 2018, defendant, Professor Lloyd sent an email to the entire campus stating: "As the College collapses due to low enrollment and lack of funds, the true nature of Professors Yarmish and Lax come out for the world to see. 'Mine, mine, mine,' just like the seagulls in Finding Nemo. Let's see, suing Stu Suss for being anti-Semitic. Now accusing the PFC of being anti-Semitic. My only hope is that out of all the mess on campus, the math department ends up with a new Chair." Needless to say, this had a greatly chilling and suppressing effect on the complaints regarding discriminations.

129.    Additional failures by Kingsborough and CUNY to address discrimination were manifested when Plaintiff Lax and other professors made complaints to Michael Valente ("Valente"), who became Kingsborough's Chief Diversity Office in mid or late 2019. After a student reported an incident of an adjunct professor calling a student a "stupid pig" in German (a phrase which has ugly Nazi connotations), Plaintiff Lax reported the incident to Valente. However, Valente rudely denied that there was any way that the phrase was discriminatory and refused to investigate. Valente did not even wish to learn whether the victim was Jewish.

130.    Valente also refused to investigate complaints by multiple Observant Jewish professors that Wetzel refused to shake their hands despite the well-documented context of

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 26 of 33 PageID #: 133

Wetzel's anti-religious behavior as outlined above.

131.    On February 11, 2021 the EEOC issued a Letter of Determination (attached hereto as **Exhibit A**) which found that the Plaintiffs and other Observant Jewish faculty were discriminated against. Of particular note, the EEOC found that:

> *The Commission's investigation reveals that Charging Party and other similarly situated individuals were discriminated and retaliated against because of their religion; including, that Respondent rejected Charging Party and other similarly situated individuals' membership of the Professional the Progressive Faculty Caucus of Kingsborough Community College. In addition, witness testimony corroborates that Respondent failed to take corrective action despite the numerous complaints it received in connection with religious discrimination. Based on the above, Respondent's asserted defenses do not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated and retaliated against Charging Party and other similarly situated individuals on the account of religion and that it failed to take immediate corrective action creating a hostile working environment, all in violation of Title VII of the Civil Rights Act 1964, as amended.*

132.    Even after the EEOC notified Defendants of wide-ranging findings of religious discrimination, retaliation, and hostile work environment against Plaintiff Lax, on February 23, 2021 President Schrader retaliated against Lax in humiliating fashion by circulating vile quotes from a faculty survey to the entire Kingsborough campus which named Plaintiff Lax as the main cause of the lack of collegiality on campus, specifically *because* Lax had filed discrimination claims. PFC members were quoted in the survey responses not only outrageously asserting that "Lax's lawsuit" based on religious discrimination was somehow the root of the problem on campus but further hurled anti-Semitic tropes at Plaintiffs Lax and Yarmish, vilely accusing "Zionist" department chairs of causing "oppression" on campus.

133.    Only weeks after receiving the EEOC letter of determination which overwhelmingly ruled in favor of Plaintiff Lax, President Shrader chose to circulate these repugnant comments to the entire Kingsborough campus despite the obvious negative impact

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 27 of 33 PageID #: 134

they would have on Plaintiff Lax's social, emotional and career standing on campus. Schrader neglected even to redact Lax's name from the quotes. These acts, especially in such close proximity to the EEOC determination, were blatantly and clearly retaliatory.

## AS AND FOR A FIRST CAUSE OF ACTION
*(Hostile Work Environment Discrimination on the Basis of Religion*
*in Violation of the NYSHRL)*

134. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

135. The NYSHRL prohibits discrimination against any employee on the basis of religion and holds an employer or labor organization liable for such conduct when, inter alia, the employer or labor organization knew of the discriminatory conduct and failed to take immediate and appropriate corrective action or exercise reasonable diligence to prevent the discriminatory conduct from occurring.

136. Defendant CUNY is an "employer," defendant Union is a "labor organization," and Plaintiffs are each an "employee" within the meaning of the NYSHRL.

137. As described above, after Plaintiffs were subjected to discriminatory conduct on the basis of his religion and complained about it, CUNY failed to take immediate and appropriate corrective action or exercise reasonable diligence to correct the discriminatory conduct and the Union and New Caucus, through its leaders and members aided the discrimination and actively suppressed Ajibade's investigation in its preliminary stages, thereby subjecting Plaintiffs to a hostile work environment on the basis of their religion.

138. Even after the Jackson Lewis report's finding that the Plaintiffs were discriminated against in violation of CUNY Policy and State and Federal Law, CUNY still refused to take remedial efforts to address or even acknowledge the discrimination suffered by

Case 1:22-cv-06793-NGG-PK    Document 10-3    Filed 01/19/23    Page 28 of 33 PageID #: 135

the Plaintiffs and other Observant Jewish faculty members.

139. As a direct and proximate result of Defendants' failure to address or correct the discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

140. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violation of the NYSHRL, for which Plaintiffs are entitled to an award of attorneys' fees and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### *(Retaliation in Violation of the NYSHRL)*

141. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

142. Under the NYSHRL, it is unlawful for an employer or labor organization to retaliate against an employee who makes a good faith complaint in opposition to a discriminatory practice prohibited by the NYSHRL.

143. Defendant CUNY is an "employer," defendant Union is a "labor organization," and Plaintiffs are each an "employee" within the meaning of the NYSHRL.

144. As described above, after Plaintiffs engaged in activity protected by the NYSHRL, Defendants retaliated by subjecting them to conduct that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

145. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continues to suffer, severe mental

Case 1:22-cv-06793-NGG-PK Document 10-3 Filed 01/19/23 Page 29 of 33 PageID #: 136

anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

146.    Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiffs are entitled to an award of attorneys' fees and punitive damages.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>
*<u>(Hostile Work Environment Discrimination on the Basis of Religion
in Violation of the NYCHRL)</u>*

147.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

148.    The NYCHRL prohibits discrimination against any employee on the basis of religion and holds an employer or labor organization liable for such conduct when, inter alia, the employer or labor organization knew of the discriminatory conduct and failed to take immediate and appropriate corrective action or exercise reasonable diligence to prevent the discriminatory conduct from occurring.

149.    Defendant CUNY is an "employer," defendant Union is a "labor organization," and Plaintiffs are each an "employee" within the meaning of the NYCHRL.

150.    As described above, after Plaintiffs were subjected to discriminatory conduct on the basis of his religion and complained about it. CUNY failed to take immediate and appropriate corrective action or exercise reasonable diligence to correct the discriminatory conduct and the Union and the New Caucus, through its leaders and members aided the discrimination and actively suppressed Ajibade's investigation in its preliminary stages, thereby subjecting Plaintiffs to a hostile work environment on the basis of their religion.

151.    Even after the Jackson Lewis report's finding that the Plaintiffs were discriminated against in violation of CUNY Policy and State and Federal Law, CUNY still refused to take remedial efforts to address or even acknowledge the discrimination suffered by the Plaintiffs and other Observant Jewish faculty members.

152.    As a direct and proximate result of Defendants' failure to address or correct the discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they is entitled to an award of monetary damages and other relief.

153.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violation of the NYCHRL, for which Plaintiffs are entitled to an award of attorneys' fees and punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
*(Retaliation in Violation of the NYCHRL)*

154.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

155.    Under the NYCHRL, it is unlawful for an employer or labor organization to retaliate against an employee who makes a good faith complaint in opposition to a discriminatory practice prohibited by the NYCHRL.

156.    Defendant CUNY is an "employer," defendant Union is a "labor organization," and Plaintiffs are each an "employee" within the meaning of the NYCHRL.

157.    As described above, after Plaintiffs engaged in activity protected by the NYCHRL, Defendants retaliated by subjecting them to conduct that would dissuade a

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 31 of 33 PageID #: 138

reasonable employee from making or supporting a similar complaint of discrimination, .

158.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

159.    Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiffs are entitled to an award of attorneys' fees and punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
*(Assault and False Imprisonment on behalf of Plaintiff Lax as and Against Defendants Schnee, Wetzel, Gartner, Alessandrini and Garland)*

160.    Plaintiff Lax repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

161.    At a Union function held in a Kingsborough room on April 4, 2019, defendants Schnee, Wetzel, Gartner, Alessandrini and Garland accosted Plaintiff Lax and when Plaintiff Lax attempted to leave, the defendants, intending to confine Plaintiff Lax, surrounded and cornered him, while simultaneously hurling vitriol at Plaintiff Lax. When Plaintiff Lax again attempted to leave, Gartner held his hand above Plaintiff Lax to stop him and said, "we're just getting started."

162.    During this ordeal, Plaintiff Lax was both frightened for his physical safety as well as emotionally humiliated. Plaintiff Lax subsequently filed a complaint with the Kingsborough Department of Public Safety and Security, which neglected to investigate or take any corrective action.

Case 1:22-cv-06793-NGG-PK  Document 10-3  Filed 01/19/23  Page 32 of 33 PageID #: 139

## DEMAND FOR A JURY TRIAL

163.     Plaintiffs demand a trial by jury on all issues and causes in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.     Declaring that the actions, conduct, and practices of the Defendants complained of herein violate the laws of the State of New York and the City of New York;

b.     Granting preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.     Granting an order restraining Defendants from any retaliation against Plaintiffs for participation in any form in this litigation;

d.     Granting an award of damages in an amount to be determined at trial to compensate Plaintiffs for all monetary and/or economic damages in connection with their claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that they would have received but for the Defendants' unlawful conduct;

e.     Granting an award of damages to be determined at trial to compensate Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment in connection with their claims;

f.     Granting an award of damages to be determined at trial to compensate Plaintiffs for emotional distress and/or mental anguish in connection with their claims; Granting an award of punitive damages, as provided by law;

Case 1:22-cv-06793-NGG-PK   Document 10-3   Filed 01/19/23   Page 33 of 33 PageID #: 140

g.      Granting an award of punitive damages, as provided by law;

h.      Awarding Plaintiffs their reasonable attorneys' fees, costs, and disbursements incurred in connection with this action, including, but not limited to, any expert witness fees;

i.      Awarding pre-judgment and post-judgment interest, as provided by law; and

j.      Granting such other and further relief, including equitable relief, as the Court may deem just and proper.

**WHEREFORE**, Plaintiffs demands judgment against the Defendants for an award of damages to be determined at trial, plus interest thereon, plus reasonable attorney's fees, plus the costs and disbursements of this action, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
        February 25, 2021

                                Yours, etc.,
                                THE ZWEIG LAW FIRM, P.C.


                                By: _____
                                    Jonah S. Zweig, Esq.
                                Attorneys for Plaintiffs
                                *Office and P.O. Address:*
                                1901 Avenue S
                                Brooklyn, New York 11229
                                (718) 506-4105
                                jzweig@zweigpc.com